

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil No.: 4:22-cv-00008-BO

HARFORD MUTUAL INSURANCE )
COMPANY, STREAMLINE DEVELOPERS, )
LLC, and CHRISTOPHER JORDAN )
MAROULES, )
)
Plaintiffs, )
) **THIRD AMENDED COMPLAINT**
v. )
)
AUTO-OWNERS INSURANCE )
COMPANY, )
)
Defendant. )

Plaintiffs Harford Mutual Insurance Company, Streamline Developers, LLC, and

Christopher Jordan Maroules[1] (collectively "Plaintiffs"), by and through undersigned counsel, for

declaratory judgment and other relief against Defendant Auto-Owners Insurance Company allege

and say as follows:

<u>**PARTIES**</u>

1.      Plaintiff Harford Mutual Insurance Company ("HMIC") is a corporation organized

under the laws of the State of Maryland with its principal place of business located in the State of

Maryland. At all times relevant hereto, HMIC was authorized to conduct business in the insurance

industry in the State of North Carolina.

---

[1]      Plaintiffs Streamline Developers, LLC, and Christopher Jordan Maroules ("the Streamline Plaintiffs") in the
Second Amended Complaint [DE-53] specifically incorporated their Crossclaim [D.E. 34] against Defendant Auto-
Owners Insurance Company ("Auto-Owners"). After the Order was entered denying Auto-Owners motions to dismiss
on March 20, 2023, Auto-Owners filed their first Answer on March 29, 2023 [DE-68]. This Third Amended Complaint
is in response to the defenses and allegation responses set forth in the Auto-Owners Answer; clarifies the allegations
and the claims alleged by the Streamline Plaintiffs against Auto-Owners; and is in response to Auto-Owners assertion
that it is unclear whether it needs to respond to the Streamline Plaintiffs' Crossclaims [D.E. 68, footnote 1].

2.     Plaintiff Streamline Developers, LLC ("Streamline"), is a Limited Liability Company organized and existing under the laws of the State of North Carolina with its principal place of business in Carteret County, North Carolina. All of Streamline's members are citizens of the State of North Carolina.

3.     Streamline is a licensed general contractor based in Carteret County which is and has been in the business of constructing residential homes throughout Eastern North Carolina for over 12 years.

4.     Plaintiff Christopher Jordan Maroules ("Maroules") is a citizen and resident of Carteret County, North Carolina. Mr. Maroules is the Managing Member of Streamline and is the qualifier for Streamline's license with the North Carolina Licensing Board for General Contractors. Streamline and Mr. Maroules shall collectively be referred to as "the Streamline Plaintiffs".

5.     Upon information and belief, Auto-Owners Insurance Company ("Auto-Owners"), is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Lansing, Michigan.

**JURISDICTION AND VENUE**

6.     This is both a declaratory judgment action with jurisdiction based upon 28 U.S.C. § 2201 and diversity of citizenship under 28 U.S.C. § 1332, and claims for damages against Auto-Owners, where the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) by virtue of the fact that a substantial part of the events giving rise to the claims took place in this District.

8.     This Court has the power to grant the declaratory and other relief sought in this action pursuant to, *inter alia*, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

9.     An actual controversy of a justiciable nature currently exists between and among HMIC, the Streamline Plaintiffs, and Auto-Owners, as set forth herein.

## THE UNDERLYING LITIGATION

10.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 9 of the Complaint.

11.     On or about July 2, 2020, Nancy Stoller and Leachman Stoller Home Plan Design, LLC ("Underlying Plaintiffs"), commenced a civil lawsuit, entitled *Nancy Stoller and Leachman Stoller Home Plan Design LLC, Plaintiffs v. Jordan Maroules, Streamline Developers LLC, Steven Grant McMillan, and Plansource Designs, LLC, Defendants*, case number 4:20-cv-00134, in the United States District Court for the Eastern District of North Carolina (the "Underlying Litigation"). On September 2, 2020, Ms. Stoller and Leachman Stoller filed their First Amended Complaint. [D.E. 53-1].

12.     The Underlying Litigation arises from damages the Underlying Plaintiffs claimed they sustained between December 2014 and 2020, as a result of the Streamline Plaintiffs' use of home designs generated by Underlying Plaintiffs in residential construction without paying the required licensing or reuse fees.

13.     As alleged in the Underlying Plaintiffs' filed Complaint, the unauthorized use of home designs generated by Underlying Plaintiffs began as early as December 2014 and continued up to and through 2020.

## THE BUILDERS MUTUAL POLICY

14.     Streamline is the named insured under Builders Mutual Insurance Company ("BMIC") Policy No. CPP 0048355 03 (the "Builders Mutual Policy") with a Policy Period of May 18, 2014, to May 18, 2015.[2]

15.     Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Builders Mutual Policy.

16.     The Builders Mutual Policy contains terms and conditions similar to those of the HMIC Policy and the Auto-Owners Policies outlined below.

17.     BMIC extended a defense to Streamline and Mr. Maroules in the Underlying Litigation.

18.     BMIC contributed to the reasonable, good faith settlement of the Underlying Litigation on behalf of Streamline and Mr. Maroules.

## THE AUTO-OWNERS POLICIES

19.     Streamline is the named insured under Auto-Owners Policy No. 154615-35203945-15 (the "Auto-Owners Policy").

20.     The Auto-Owners Policy has a Policy Period of May 18, 2015, to May 18, 2016.

21.     Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Auto-Owners Policy.

22.     All premiums for the Auto-Owners Policy were fully and timely paid.

23.     Pursuant to the Commercial General Liability Coverage Declarations, the Auto-Owners Policy provided coverage for Personal Injury and Advertising Injury up to the limit of insurance of $1,000,000.

---

[2]     The Builders Mutual Policy is a renewal of Policies No. CPP 0048355 01 (Policy Period May 18, 2012, to May 18, 2013) and CPP 0048355 02 (Policy Period May 18, 2013, to May 18, 2014).

24.     Under the Insuring Agreement of Coverage part B of the Auto-Owners Policy, coverage is afforded as follows:

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any claim or offense and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.    This insurance applies to "personal injury" or "advertising injury" only if:

    (1)    The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

    (2)    The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

25.     The Auto-Owners Policy defines "advertising injury" to include injury arising out of one of the following offenses: "c. [t]he use of another's advertising idea in your 'advertisement;' or d. [i]nfringing upon another's copyright, 'trade dress' or slogan in your 'advertisement.'"

26.     Streamline is the named insured under Auto-Owners Commercial Umbrella Policy No. 48-117-202-02 (the "Auto-Owners Umbrella Policy").

27.     Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Auto-Owners Umbrella Policy.

28.     The Auto-Owners Umbrella Policy has a Policy Period of May 18, 2015, to May 18, 2016.

29.     Pursuant to the Commercial Umbrella Coverage Declarations, the Auto-Owners Umbrella Policy provided coverage for claims falling under the category "Other Aggregate" up to the limit of liability of $3,000,000.

30.     The Auto-Owners Umbrella Policy defines "incident" as an "offense committed by the Insured resulting in personal injury or advertising injury, including all such injury sustained by any one person or organization."

31.     Under the Insuring Agreement of Coverage part B of the Auto-Owners Umbrella Policy, coverage is afforded as follows:

> A.     We will pay those sums included in ultimate net loss that the insured becomes legally obligated to pay as damages because of:
>
> 3.     Personal Injury; or
>
> 4.     Advertising injury
>
> To which this insurance applies caused by an incident.

32.     When the basis of coverage for an incident under the Auto-Owners Umbrella Policy is an offense, "a. [t]he personal injury and advertising injury must be committed during the policy term; and b. [t]he Incident must take place in the policy territory."

33.     The Auto-Owners Policy and the Auto-Owners Umbrella Policy shall collectively be referred to as "the Auto-Owners Policies."

## THE HMIC POLICIES

34.     Streamline is the named insured under HMIC Policy No. 9155067 (the "HMIC Policy"). [D.E. 53-3].

35.     The HMIC Policy had a Policy Period of May 18, 2016, to May 18, 2017.[3] Each

policy renewed with similar triggering language and exclusions.

36.     Mr. Maroules was, at all relevant times, a member and manager of Streamline and

is insured under the terms of the HMIC Policy.

37.     Under the insuring agreement of Coverage B – "Personal and Advertising Injury

Liability," coverage is afforded as follows:

> c.      We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "personal and advertising injury" to
> which this insurance applies. We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "personal and advertising injury" to
> which this insurance does not apply. We may, at our discretion,
> investigate any offense and settle any claim or "suit" that may result.
> But:
>
> (3)     The amount we will pay for damages is limited as described in
> Section III – Limits Of Insurance; and
>
> (4)     Our right and duty to defend end when we have used up the
> applicable limit of insurance in the payment of judgments or
> settlements under Coverages A or B or medical expenses under
> Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is
> covered unless explicitly provided for under Supplementary Payments –
> Coverages A and B.
>
> d.      This insurance applies to "personal and advertising injury" caused
> by an offense arising out of your business but only if the offense was
> committed in the "coverage territory" during the Policy Period.

D.E. Exhibit C at 93.

---

[3]     The HMIC Policy was renewed for the following Policy Periods under the following Policy Numbers: Policy
Number 9162986 – May 18, 2017, to May 18, 2018; Policy Number 9173587 – May 18, 2018, to May 18, 2019;
Policy Number 9183938 – May 18, 2019, to May 18, 2020; Policy Number 9194044 – May 18, 2020, to May 18,
2021; and Policy Number 9203759 – May 18, 2021, to May 18, 2022.

38. The HMIC Policy defines "personal and advertising injury" to include injury arising out of one of the following offenses: "f. [t]he use of another's advertising idea in your 'advertisement;' or g. [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

## DEFENSE AND SETTLEMENT OF THE UNDERLYING LITIGATION

39. On August 12, 2021, HMIC formally notified Streamline and Mr. Maroules in writing that HMIC would defend Streamline and Mr. Maroules, subject to a full reservation of its rights regarding the applicable HMIC Policy and Underlying Litigation. [D.E. 53-4].

40. In its reservation of rights, HMIC informed Streamline and Mr. Maroules that HMIC would provide a defense of the Underlying Litigation effective July 6, 2021, subject to the reservation of rights and without waiving any defenses to coverage.

41. On October 27, 2021, Builders Mutual Insurance Company ("Builders Mutual"), which insured Streamline from May 18, 2014, to May 18, 2015, under Policy No. CPP 0048355 (the "Builders Mutual Policy"), issued a reservation of rights informing Streamline and Mr. Maroules indicating that it would provide a defense of the Underlying Litigation subject to the reservation and without waiving any defenses to coverage. *See* [D.E. 34-4].

42. Despite every other insurer from whom Streamline had purchased coverage during the period of its alleged negligence agreeing to defend, on December 9, 2021, Auto-Owners denied coverage for the Underlying Litigation and refused to provide a defense to Streamline or Mr. Maroules. *See* [D.E. 34-3].

43. Auto-Owners December 9, 2021, denial of any duty to provide a defense operates as a waiver of its right to contest coverage as, in fact, on that date Auto-Owners did have a duty to

defend, declined that opportunity, and even failed to file a declaratory action claim or at least defend under a reservation of rights.

44.    On June 21, 2022, the parties to the Underlying Litigation, HMIC, and Builders Mutual participated in a mediated settlement conference.

45.    Auto Owners was invited to attend and participate in the mediation but refused. A true copy of the email communications with Auto-Owners' counsel about their non-participation in the mediation is attached hereto as Exhibit A.

46.    In the days that followed the mediated settlement conference, the parties reached an agreement wherein the underlying matter was resolved for a total payment of $3,000,000, divided and paid as follows:

   a.    Three hundred and Fifty Thousand dollars ($350,000.00) paid by Streamline and Mr. Maroules;

   b.    Forty Thousand dollars ($40,000.00) paid by BMIC; and

   c.    Two Million, Six Hundred Ten Thousand dollars ($2,610,000.00) paid by HMIC, broken into two payments of $310,000.00, paid on July 20, 2022, and $2,300,000.00 to be paid on January 15, 2023.

47.    Auto-Owners did not contribute to the settlement of the Underlying Litigation in any way.

48.    Despite being told of the mediated settlement conference and expressly indicating that it would not attend but hoped the Underlying Litigation would settle, Auto-Owners contends that coverage under the Auto-Owners Policies has been waived because the case settled as a result of the mediation without Auto-Owners consent [D.E. 68 at 19, Fourteenth Affirmative Defense].

9

49.     The Release and Settlement Agreement in the Underlying Litigation did not apply to HMIC or the Streamline Plaintiffs' claims against Auto-Owners.

## FIRST CLAIM FOR RELIEF
### (HMIC's Declaratory Claim)

50.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49 of the Complaint.

51.     All allegations in the Underlying Litigation can be traced to Streamline and Mr. Maroules's decision to utilize Underlying Plaintiffs' copyrighted material without a license, which, by plain reading of the Underlying Complaint, between 2014 and 2020, which was within the period of the Auto-Owners Policies.

52.     The claims alleged in the Underlying Litigation constitute a series of continuous, repeated, interrelated acts, or a single cause or related acts, to utilize Underlying Plaintiffs' copyrighted material in to market, build, and sell homes constructed by Streamline and Mr. Maroules.

53.     All of the alleged damages in the Underlying Litigation stem from the alleged common scheme of Streamline and Mr. Maroules to utilize Underlying Plaintiffs' copyrighted material without a license.

54.     Accordingly, pursuant to the terms of the Auto-Owners Policy and HMIC Policy, all the claims against Streamline and Mr. Maroules in the Underlying Litigation should be construed as one occurrence, which began prior to the policy period of the HMIC Policy.

55.     HMIC respectfully requests the Court judicially declare that the actions of Streamline and Mr. Maroules constitute a single occurrence that began prior to the first date of coverage under the HMIC Policy.

## SECOND CLAIM FOR RELIEF
## (HMIC's Claim for Contribution and Indemnification Against Auto-Owners)

56.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 55 of the Complaint.

57.     The Auto-Owners Policies were issued in North Carolina, and North Carolina governs the interpretation of the Auto-Owners Policies.

58.     The words used in the Auto-Owners Policies have been selected by Auto-Owners, any ambiguity or uncertainty as to their meaning must be resolved in favor of the insureds and against Auto-Owners.

59.     All provisions in an insurance policy which extended coverage to an insured must be construed liberally so as to afford coverage whenever possible by reasonable construction.

60.     Exclusionary provisions in an insurance policy are not favored and, if ambiguous, will be construed against an insurer, in this case Auto-Owners, and in favor of an insured.

61.     The duty to defend is broader than the obligation to pay damages incurred by events covered by a particular policy.

62.     If just one of many claims asserted potentially triggers a coverage obligation, even though the other claims are not covered, then the insurer has a duty to defend all of the claims alleged in the suit.

63.     If an insurer unjustifiably refuses to defend its insured, the insurer is obligated to pay the amount of any reasonable compromise or settlement made in good faith by the insured.

64.     Multiple contended personal or advertising offenses were alleged to have been committed by one or both of Streamline or Mr. Maroules during the policy period of the Auto-Owners Policy.

11

65.     One or more of the claims set forth in the Underlying Litigation are covered under the terms of the Auto-Owners Policy.

66.     The claims against Streamline and Mr. Maroules in the Underlying Litigation allege one or more personal or advertising injuries under the terms of the Auto-Owners Policy.

67.     The claims against Streamline and Mr. Maroules in the Underlying Litigation trigger the duty to defend under the Auto-Owners Policy.

68.     The claims against Streamline and Mr. Maroules in the Underlying Litigation trigger the liability insuring agreements in the Auto-Owners Policies.

69.     The claims against Streamline and Mr. Maroules in the Underlying Litigation are not excluded under the terms of the Auto-Owners Policy.

70.     The claims against Streamline and Mr. Maroules trigger the insuring agreement in the Auto-Owners Umbrella Policy.

71.     The claims against Streamline and Mr. Maroules in the Underlying Litigation are not excluded under the terms of the Auto-Owners Policy.

72.     At the time of the issuance of the Auto-Owners denial letter, Auto-Owners was obligated to provide a defense to Streamline and Mr. Maroules.

73.     Auto-Owners unjustifiably denied Streamline and Mr. Maroules a defense in the underlying litigation.

74.     Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify Streamline and Mr. Maroules for the good faith settlement in the Underlying Litigation.

75.     The same principle which obligates Auto-Owners to pay for the amounts expended by Streamline and Maroules applies to Auto-Owners' obligation to reimburse HMIC for sums it expended to settle.

76.     Auto-Owners has waived its right to deny an indemnification obligation for the claims alleged in the Underlying Litigation.

77.     Builders Mutual and HMIC extended a defense to Streamline and Mr. Maroules in the Underlying Litigation.

78.     Because Auto-Owners unreasonably denied a defense to Streamline and Mr. Maroules, HMIC paid a disproportionate share of the cost of defense of the Underlying Litigation.

79.     Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify HMIC for amounts HMIC expended towards the defense of Streamline and Mr. Maroules in the Underlying Litigation up to the coverage limit of the Auto-Owners Policy and the Auto-Owners Umbrella Policy.

80.     Builders Mutual and HMIC indemnified Streamline and Mr. Maroules through the settlement reached in the Underlying Litigation.

81.     HMIC contributed $2,610,000 on behalf of Streamline and Mr. Maroules to the settlement of the Underlying Litigation.

82.     Auto-Owners refused to participate in the mediated settlement conference conducted in the Underlying Litigation and did not contribute to the settlement.

83.     Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify HMIC for amounts HMIC expended towards the settlement of the

13

Underlying Litigation up to the coverage limit of the Auto-Owners Policy and the Auto-Owners Umbrella Policy.

## THIRD CLAIM FOR RELIEF
### (The Streamline Plaintiffs' Breach of Contract Claim)

84.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 83 of the Complaint.

85.     The Streamline Plaintiffs were insured under the Builders Mutual Policy which was in effect between May 18, 2014 and May 18, 2015; the Auto-Owners Policies which were in effect between May 18, 2015 and May 18, 2016; and the HMIC Policies which were in effect between May 18, 2016 and May 18, 2021.

86.     The Underlying Litigation was commenced on July 2, 2020, and alleged claims for infringement that occurred continuously between December 2014 and 2020.

87.     Builders Mutual agreed to provide a defense to the Streamline Plaintiffs to all claims alleged in the Underlying Action under a reservation of rights.

88.     HMIC agreed to provide a defense to the Streamline Plaintiffs to all claims alleged in the Underlying Action under a reservation of rights.

89.     Conversely, on December 9, 2021, Auto-Owners issued the Streamline Plaintiffs a blanket denial letter [D.E. 34-3] which denied any obligation to defend or indemnify the Streamline Plaintiffs for any of the claims alleged in the Underlying Litigation ("the Denial").

90.     At the time of the Denial, none of the claims alleged against the Streamline Defendants in the Underlying Action had been dismissed.

91.     "The duty to defend is broad. Where the allegations of a complaint bring a claim within the coverage of the policy, an insurer's duty to defend is absolute. An insurer has a duty to defend against even groundless, false, or fraudulent accusations. Only 'if the facts are not even

arguably covered by the policy' can an insurer be excused from its duty to defend." *Craige v. Government Employees Insurance Co.,* 503 F.Supp. 3d 365, 372 (M.D.N.C. 2020) [Schroeder, J.] [internal citations omitted].

92.     At the time of the Denial, Auto-Owners was obligated to provide a defense to the Streamline Plaintiffs in the Underlying Litigation.

93.     "[A]n insurer has three options under North Carolina law when faced with a request to defend an insured against claims which the insurer believes exceed the policy coverage. An insurer may: '(1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.' Here, Defendants chose the third option, and that decision was certainly at their peril, as the court has found that Defendants unjustifiably breached their duty to defend [the insured] Rigsbee. The court must now consider what obligation Defendants have with regard to the judgment entered against [the insured] Rigsbee. As established by Lozada, 'where Defendant had a duty to defend which arose from the possibility that a claim was covered and, when Defendant declined its opportunity to defend, the judgment rendered in favor of Plaintiff became binding on Defendant . . . to the extent of its policy limits.'" *Craige,* 503 F.Supp. 3d at 378 [Schroeder, J.] [internal citations omitted].

94.     Auto-Owners improperly declined the opportunity to provide a defense to the Streamline Plaintiffs when it issued its Denial and the settlement of the Underlying Litigation became binding on Auto-Owners to the extent of the limits of liability under the Auto-Owners Policies.

95.     In the Denial, Auto-Owners provided three bases for its decision: (1) no offenses ostensibly occurred during their May 18, 2015 to May 18, 2016 policy period, (2) the intentional act exclusion may apply, and (3) there was a contended late notice of the claims alleged against the Streamline Plaintiffs. [D.E. 34-3 at 8-9].

96.     In the Answer filed by Auto-Owners on March 29, 2023, they now allege a host of additional reasons to justify that their denial of any defense or coverage obligation was appropriate. [D.E. 68 at 17-20, Sixth, Eighth, Ninth, Tenth, Twelfth, and Fifteenth Affirmative Defenses].

97.     In North Carolina, an insurer's reservation of rights or denial letter to the insured must explain with some level of specificity why any contended exclusion or condition applies to potentially bar or limit coverage and it can't be left to the insured to decipher what an insurer's investigation might reveal. *DENC, LLC v. Philadelphia Indemnity Ins. Co.,* 32 F.4th 38 (4th Cir. 2022).

98.     Auto-Owners now asserts that a number of different policy provisions might support their denial even though they were not the basis of the Denial.

99.     In addition, the principal basis for Auto-Owners' contention that the claims in this action alleged by the Streamline Plaintiffs should be dismissed is the application of the statute of limitations in the Underlying Litigation which was also not a basis set forth in the Denial to deny any defense or indemnification obligation to the Streamline Plaintiffs and which had not been ruled upon at the time of Auto-Owners' Denial. [D.E. 56].

100.    Furthermore, Auto-Owners was given the opportunity to participate in the June 21, 2022, mediation of the Underlying Litigation, declined that opportunity and refused to attend, and now contends that coverage under the Auto-Owners Policies was waived because Auto-Owners

did not consent to the settlement forged between the plaintiffs in the Underlying Litigation, HMIC, Builders Mutual, and the Streamline Plaintiffs. [D.E. 68 at 19, Fourteenth Affirmative Defense].

101.    Auto-Owners has breached the Auto-Owners Policies and their contractual obligations to the Streamline Plaintiffs by (a) wrongfully denying its defense obligation to the Streamline Defendants in the Denial, (b) failing to reimburse the Streamline Plaintiffs the sums they paid to help settle the Underlying Litigation, (c) failing to acknowledge that they waived the right to contest the reasonableness of the settlement based upon the improper Denial, (d) alleging defenses in this action which were not included in the Denial, (f) contending that the settlement of the Underlying Litigation, despite receiving notice of the mediation and declining to participate, was a waiver of any right to coverage, and (g) in other particulars which will be adduced through further investigation, discovery, or at trial.

102.    As a result of Auto-Owners breach of contract, the Streamline Plaintiffs have incurred – including but not limited to the $350,000 Underlying Litigation settlement payment – and continue to incur damages

FOURTH CLAIM FOR RELIEF
(The Streamline Plaintiffs' Unfair Claims Practices/Trade Practices Claim)

103.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 102 of the Complaint.

104.    N.C.G.S. § 75-1.1 provides that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

105.    N.C.G.S. § 58-63-15 (the "Unfair Claims Act") provides in pertinent part that the following are "Unfair Claim Settlement Practices" – all of which Auto-Owners committed:

    a.   Misrepresenting pertinent facts or insurance policy provisions relating to

17

coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Compelling the Streamline Plaintiffs to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

d. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim; and

e. In other particulars which may be adduced through further investigation, discovery, or at trial.

106. The North Carolina Supreme Court has held that an insurance company that engages in an act or practice that violates one or more of the unfair claim settlement practices set forth in N.C.G.S. § 58-63-15 also engages in conduct that violates N.C.G.S. § 75-1.1 as a matter of law, without the necessity of an additional showing of frequency indicating a "general business practice."

107. Auto-Owners acts, practices, and conduct were unfair and/or deceptive in violation of the Unfair Claims Act, and therefore as a matter of law constitute an actionable violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

108. The Auto-Owners Policies are contracts involving and affecting commerce.

109. Auto-Owners violations of the Unfair Claims Act constitute aggravating conduct accompanying its contract breaches.

110. The Streamline Plaintiffs have suffered and continue to suffer damages as a direct

18

and proximate result of Auto-Owners acts and conduct, including their legal fees and expenses incurred.

111.    Pursuant to N.C.G.S. § 75-16, the Streamline Plaintiffs are entitled to recover treble damages from Auto-Owners.

112.    Pursuant to N.C.G.S. § 75-16.1, the Streamline Plaintiffs are entitled to recover their reasonable attorneys' fees from Auto-Owners.

FIFTH CLAIM FOR RELIEF
(the Streamline Plaintiffs' Breach of Covenant of Good Faith Claim)

113.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 112 of the Complaint.

114.    As the Streamline Plaintiffs' insurer, Auto-Owners had a duty to carry out in good faith its obligations under the Policies.

115.    The plaintiffs in the Underlying Action had asserted that they would recover a judgment against the Streamline Plaintiffs in an amount of approximately $26,000,000, which is in excess of the limits of coverage under all potential insurance policies, including the Auto-Owners Policies.

116.    Nevertheless, Auto-Owners, among other things, refused to provide a defense, denied all obligations in the Denial, refused to participate or even attend the mediation in the Underlying Litigation, and then contended that the settlement was a waiver of coverage under the Auto-Owners Policies.

117.    Auto-Owners has acted without justification.

118.     Auto-Owners conduct detailed herein was in bad faith and in violation of its covenant of good faith and fair dealing implied by law into the Auto-Owners Policies and owed to the Streamline Plaintiffs, their insureds.

119.     A non-exclusive list of Auto-Owners' conduct that illustrates its bad faith includes, refusing to provide a defense, denying all obligations in the Denial, refusing to participate or even attend the mediation in the Underlying Litigation and then contended that the settlement was a waiver of coverage under the Auto-Owners Policies, and asserting new potential insurance policy defenses not raised in the Denial.

120.     As a proximate result of Auto-Owners breach of its covenant of good faith and fair dealing, the Streamline Plaintiffs have been damaged.

121.     In addition, the Streamline Plaintiffs are entitled to recover punitive damages against Auto-Owners in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully pray the Court for the following relief:

1.     The Court enter a Declaratory Judgment that the actions of Streamline and Mr. Maroules constitute a single occurrence that began prior to the first date of coverage under the HMIC Policy;

2.     The Court enter a Declaratory Judgment that Auto-Owners had, without reservation, a duty under the Auto-Owners Policy to defend Streamline and Mr. Maroules in the Underlying Litigation;

3.     The Court enter Judgment in favor of HMIC and against Auto-Owners and order Auto-Owners to reimburse amounts HMIC expended for the defense of Streamline and Mr.

Maroules in the Underlying Litigation up to the applicable coverage limits of the Auto-Owners Policy and the Auto-Owners Umbrella Policy;

4.     A Judgment be entered against Auto-Owners and in favor of the Streamline Plaintiffs for breach of contract for damages in an amount to be determined by the trier of fact and for prejudgment interest from the date of breach;

5.     The Court award to the Streamline Plaintiffs treble damages as provided by N.C.G.S. §§ 75-1.1, 75-16, and all other applicable law;

6.     The Court award to the Streamline Plaintiffs punitive damages as provided by N.C.G.S. § 1D-15, in an amount to be determined by the trier of fact;

7.     The Court tax to Auto-Owners costs and attorneys' fees, pursuant to N.C.G.S. § 75-16.1 and all other applicable law;

8.     There be a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38; and

9.     For such other and further relief as the Court shall deem just and proper.

This the 22nd day of May, 2023.

TEAGUE, CAMPBELL, DENNIS & GORHAM, L.L.P.

BY: /s/ William A. Bulfer
      William A. Bulfer – N.C. State Bar No. 31424
      Megan N. Silver – N.C. State Bar No. 40070
      117 Cherry Street North
      Asheville, North Carolina 28801
      Telephone:     (828) 254-4515
      Fax:            (828) 254-4516
      Email:        wbulfer@teaguecampbell.com
                     msilver@teaguecampbell.com

      Daniel T. Strong – N.C. State Bar No. 49546
      4700 Falls of Neuse Road, Suite 450
      Raleigh, North Carolina 27609
      Telephone:     (919) 873-0166
      Fax:            (919) 873-1814
      Email:        dstrong@teaguecampbell.com

      *Attorneys for Plaintiff Harford Mutual Insurance Co.*


**BAILEY & DIXON, LLP**

BY: /s/ David S. Coats
      David S. Coats – N.C. State Bar No. 16162
      434 Fayetteville Street, Suite 2500
      Raleigh, NC 27601
      Telephone:     (919) 828-0731
      Fax:            (919) 828-6592
      Email:        dcoats@bdixon.com

      *Attorneys for the Streamline Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all known counsel of record.

This the 22nd day of May, 2023.

BY: /s/ David S. Coats_____

## Coats, David

**Subject:** FW: Harford v. Streamline / Deadline to Respond to Crossclaim

**From:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Sent:** Monday, June 20, 2022 1:32 PM
**To:** Coats, David <DCoats@bdixon.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>; Patricia Young <pyoung@bdixon.com>
**Subject:** RE: Harford v. Streamline / Deadline to Respond to Crossclaim

David,

Auto-Owners will not make any offer with respect to defense costs or indemnity coverage as part of this mediation. With respect to a settlement of the underlying action, I hope that the parties are in fact able to reach an agreeable resolution, and Auto-Owners has no interest in preventing that. On behalf of my client, however, and in an abundance of caution, I would clarify that Auto-Owners reserves the right to object (in the pending coverage litigation or any subsequent proceeding) to any term of settlement or any written settlement agreement that prejudices (or attempts to prejudice) its own rights under the Auto-Owners Policies, including without limitation any attempt to broaden the nature of the allegations at issue in the underlying action to fall within any operative coverage grant.

Thanks,

**Matthew A. L. Anderson**
*Licensed in North Carolina and South Carolina*



**Georgia | North Carolina | South Carolina | Florida**
806 Green Valley Road, Suite 203
Greensboro, North Carolina 27408
Direct 336.907.3905 | Fax 336.907.4178

**From:** Coats, David <DCoats@bdixon.com>
**Sent:** Monday, June 20, 2022 11:58 AM
**To:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>; Patricia Young <pyoung@bdixon.com>
**Subject:** RE: Harford v. Streamline / Deadline to Respond to Crossclaim

Matthew: Understood. Unless you tell me otherwise, I'm assuming that Auto-Owners will not offer anything for either defense costs or indemnification and will not object to any settlement of the underlying action that might be reached. Thanks, David

**From:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Sent:** Monday, June 20, 2022 9:10 AM
**To:** Coats, David <DCoats@bdixon.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>; Patricia Young <pyoung@bdixon.com>
**Subject:** RE: Harford v. Streamline / Deadline to Respond to Crossclaim



EXHIBIT

A

David,

Appreciate your email. I was not aware that a mediation was scheduled for tomorrow, but Auto-Owners would not be participating in any event. Unlike BMI and Harford, Auto-Owners has not reserved rights, but has already disclaimed coverage. If the participants need me to jump on the phone with the mediator or any other party to explain or discuss that tomorrow, I am happy to do so.

Thanks,

**Matthew A. L. Anderson**
*Licensed in North Carolina and South Carolina*



**Georgia | North Carolina | South Carolina | Florida**
806 Green Valley Road, Suite 203
Greensboro, North Carolina 27408
Direct 336.907.3905 | Fax 336.907.4178

**From:** Coats, David <DCoats@bdixon.com>
**Sent:** Monday, June 20, 2022 8:55 AM
**To:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>; Patricia Young <pyoung@bdixon.com>
**Subject:** RE: Harford v. Streamline / Deadline to Respond to Crossclaim

Matthew: I hope all is well. I know the mediation of the underlying action is being mediated tomorrow, I will be attending with Mr. Maroules, and Mr. Bulfer and an adjuster will be participating for Harford. Is Auto Owners participating? I assume so but wasn't sure. Thanks, David

David S. Coats
Bailey & Dixon, L.L.P.
Post Office Box 1351
Raleigh, North Carolina 27602
Telephone: (919) 828-0731
Direct line: (919) 719-9522
Facsimile: (919) 828-6592
E-mail: dcoats@bdixon.com
Web Address: www.bdixon.com





The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the individual or entity named as recipient. If the reader is not the intended recipient, notice is hereby given that any dissemination or copying of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone or e-mail and delete this message from your computer and network server. Thank you.

**From:** Coats, David
**Sent:** Wednesday, March 30, 2022 11:49 AM
**To:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>; Patricia Young <pyoung@bdixon.com>
**Subject:** RE: Harford v. Streamline / Deadline to Respond to Crossclaim

Matthew: No objections and I consent. Best wishes, David

David S. Coats

Bailey & Dixon, L.L.P.

Post Office Box 1351

Raleigh, North Carolina 27602

Telephone: (919) 828-0731

Direct line: (919) 719-9522

Facsimile: (919) 828-6592

E-mail: dcoats@bdixon.com

Web Address: www.bdixon.com





The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the individual or entity named as recipient. If the reader is not the intended recipient, notice is hereby given that any dissemination or copying of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone or e-mail and delete this message from your computer and network server. Thank you.

**From:** Matthew A. L. Anderson <manderson@boviskyle.com>
**Sent:** Wednesday, March 30, 2022 11:46 AM
**To:** Coats, David <DCoats@bdixon.com>
**Cc:** Lindsay Casebier <lcasebier@boviskyle.com>
**Subject:** Harford v. Streamline / Deadline to Respond to Crossclaim

David,

We plan to file a motion to extend our deadline to respond to your crossclaim against Auto-Owners in this case. Any objection to that motion, or may I recite your consent? Please give me a call if you have any questions or want to talk further.

Thanks,

**Matthew A. L. Anderson**
*Licensed in North Carolina and South Carolina*



**Georgia | North Carolina | South Carolina | Florida**
806 Green Valley Road, Suite 203
Greensboro, North Carolina 27408
Direct 336.907.3905 | Fax 336.907.4178