IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No.: 4:22-CV-8-BO

| | |
|---|---|
| HARFORD MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>Defendant. | **FOURTH AMENDED COMPLAINT** |

Plaintiff Harford Mutual Insurance Company, by and through undersigned counsel, for declaratory judgment and other relief against Defendant Auto-Owners Insurance Company allege and say as follows:

## PARTIES

1. Plaintiff Harford Mutual Insurance Company ("HMIC") is a corporation organized under the laws of the State of Maryland with its principal place of business located in the State of Maryland. At all times relevant hereto, HMIC was authorized to conduct business in the insurance industry in the State of North Carolina.

2. Upon information and belief, Auto-Owners Insurance Company ("Auto-Owners"), is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Lansing, Michigan.

## JURISDICTION AND VENUE

3. This is both a declaratory judgment action with jurisdiction based upon 28 U.S.C. § 2201 and diversity of citizenship under 28 U.S.C. § 1332, and the claims for damages against

Auto-Owners, where the matter in controversy exceeds the sum of $75,000 exclusive of interest and cost and is between citizens of different states.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) by virtue of the fact that a substantial part of the events giving rise to the claim took place in this District.

5. This Court has the power to grant declaratory and other relief sought in this action pursuant to, *inter alia*, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. An actual controversy of a justiciable nature currently exists between HMIC and Auto-Owners, as set forth herein.

## THE UNDERLYING LITIGATION

6. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 6 of the Complaint.

7. On or about July 2, 20230, Nancy Stoller and Leachman Stoller Home Plan Design, LLC ("Underlying Plaintiffs"), commenced a civil lawsuit, entitled *Nancy Stoller and Leachman Stoller Home Plan Design LLC, Plaintiffs v. Jordan Maroules, Streamline Developers LLC, Steven Grant McMillan, and Plansource Designs, LLC, Defendants*, case number 4:20-cv-00134, in the United States District Court for the Eastern District of North Carolina (the "Underlying Litigation"). On September 2, 2020, Ms. Stoller and Leachman Stoller filed their First Amended Complaint. [D.E. 53-1].

8. The Underlying Litigation arises from damages the Underlying Plaintiffs claim they sustained between 2014 and 2020, as a result of Streamline Developers LLC ("Streamline") and Jordan Maroules' use of home designs generated by Underlying Plaintiffs in residential construction without paying the required licensing or reuse fees.

9. As alleged in the Underlying Plaintiffs' filed Complaint, the unauthorized use of home designs generated by Underlying Plaintiffs began as early as December 2014 and continued up to and through 2020.

## THE BUILDERS MUTUAL POLICY

10. Streamline is the named insured under Builders Mutual Insurance Company ("BMIC") Policy No. CPP 0048355 03 (the "Builders Mutual Policy") with a Policy Period of May 18, 2014, to May 18, 2015.[1]

11. Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Builders Mutual Policy.

12. The Builders Mutual Policy contains terms and conditions similar to those of the HMIC Policy and the Auto-Owners Policy outlined below.

13. BMIC extended a defense to Streamline and Mr. Maroules in the Underlying Litigation.

14. BMIC contributed to the reasonable, good faith settlement of the Underlying Litigation on behalf of Streamline and Mr. Maroules.

## THE ORIGINAL AUTO-OWNERS POLICIES

15. Streamline is the named insured under Auto-Owners Policy No. 154615-35203945-15 (the "Auto-Owners Policy").

16. The Auto-Owners Policy has a Policy Period of May 18, 2015, to May 18, 2016.

17. Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Auto-Owners Policy.

18. All premiums for the Auto-Owners Policy were fully and timely paid.

---

[1] The Builders Mutual Policy is a renewal of Policies No. CPP 0048355 01 (Policy Period May 18, 2012, to May 18, 2013) and CPP 0048355 02 (Policy Period May 18, 2013, to May 18, 2014).

19. Pursuant to the Commercial General Liability Coverage Declarations, the Auto-Owners Policy provided coverage for Personal Injury and Advertising Injury up to the limit of insurance of $1,000,000.

20. Under the Insuring Agreement of Coverage part B of the Auto-Owners Policy, coverage is afforded as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any claim or offense and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
>
> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> b. This insurance applies to "personal injury" or "advertising injury" only if:
>
> (1) The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and
>
> (2) The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

21. Auto-Owners Policy defines "advertising injury" to include injury arising out of one of the following offenses: "c. [t]he use of another's advertising idea in your 'advertisement;' or d. [i]nfringing upon another's copyright, 'trade dress' or slogan in your 'advertisement.'"

22. Streamline is the named insured under Auto-Owners Commercial Umbrella Policy No. 48-117-202-02 (the "Auto-Owners Umbrella Policy").

23. Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the Auto-Owners Umbrella Policy.

24. The Auto-Owners Umbrella Policy has a Policy Period of May 18, 2015, to May 18, 2016.

25. Pursuant to the Commercial Umbrella Coverage Declarations, the Auto-Owners Umbrella Policy provided coverage for claims falling under the category "Other Aggregate" up to the limit of liability of $3,000,000.

26. The Auto-Owners Umbrella Policy defines "incident" as an "offense committed by the Insured resulting in personal injury or advertising injury, including all such injury sustained by any one person or organization."

27. Under the Insuring Agreement of Coverage part B of the Auto-Owners Umbrella Policy, coverage is afforded as follows:

> A. We will pay those sums included in ultimate net loss that the insured becomes legally obligated to pay as damages because of:
>
> 3. Personal Injury; or
>
> 4. Advertising injury
>
> To which this insurance applies caused by an incident.

28. When the basis of coverage for an incident under the Auto-Owners Umbrella Policy is an offense, "a. [t]he personal injury and advertising injury must be committed during the policy term; and b. [t]he Incident must take place in the policy territory."

## THE HMIC POLICIES

29. Streamline is the named insured under HMIC Policy No. 9155067 (the "HMIC Policy"). [D.E. 53-3].

30. The HMIC Policy had a Policy Period of May 18, 2016, to May 18, 2017.[2] Each policy renewed with similar triggering language and exclusions.

31. Mr. Maroules was, at all relevant times, a member and manager of Streamline and is insured under the terms of the HMIC Policy.

32. Under the insuring agreement of Coverage B – "Personal and Advertising Injury Liability," coverage is afforded as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
> (3) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> (4) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the Policy Period.

D.E. 53-3 at 93.

33. The HMIC Policy defines "personal and advertising injury" to include injury arising out of one of the following offenses: "f. [t]he use of another's advertising idea in your

---

[2] The HMIC Policy was renewed for the following Policy Periods under the following Policy Numbers: Policy Number 9162986 – May 18, 2017, to May 18, 2018; Policy Number 9173587 – May 18, 2018, to May 18, 2019; Policy Number 9183938 – May 18, 2019, to May 18, 2020; Policy Number 9194044 – May 18, 2020, to May 18, 2021; and Policy Number 9203759 – May 18, 2021, to May 18, 2022.

'advertisement;' or g. [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

**DEFENSE AND SETTLEMENT OF THE UNDERLYING LITIGATION**

34. On August 12, 2021, HMIC formally notified Streamline and Mr. Maroules in writing that HMIC would defend Streamline and Mr. Maroules, subject to a full reservation of its rights regarding the applicable HMIC Policy and Underlying Litigation. [D.E. 53-4].

35. In its reservation of rights, HMIC informed Streamline and Mr. Maroules that HMIC would provide a defense of the Underlying Litigation effective July 6, 2021, subject to the reservation of rights and without waiving any defenses to coverage.

36. On October 27, 2021, Builders Mutual Insurance Company ("Builders Mutual"), which insured Streamline from May 18, 2014, to May 18, 2015, under Policy No. CPP 0048355 (the "Builders Mutual Policy"), issued a reservation of rights informing Streamline and Mr. Maroules indicating that it would provide a defense of the Underlying Litigation subject to the reservation and without waiving any defenses to coverage. *See* [D.E. 34-4].

37. Despite every other insurer from whom Streamline had purchased coverage during the period of its alleged negligence agreeing to defend, on December 9, 2021, Auto-Owners denied coverage for the Underlying Litigation and refused to provide a defense to Streamline or Mr. Maroules. *See* [D.E. 34-3].

38. Auto-Owners December 9, 2021, denial of any duty to provide a defense operates as a waiver of its right to contest coverage as, in fact, on that date Auto-Owners did have a duty to defend, declined that opportunity, and even failed to file a declaratory action claim or at least defend under a reservation of rights.

39. On June 21, 2022, the parties to the Underlying Litigation, HMIC, and Builders Mutual participated in a mediated settlement conference.

40. Auto-Owners was invited to attend and participate in mediation but refused.

41. In the days that followed the mediated settlement conference, the parties reached an agreement wherein the underlying matter was resolved for a total payment of $3,000,000, divided and paid as follows:

> a. Three hundred and Fifty thousand dollars ($350,000.00) paid by Streamline and Mr. Maroules;
>
> b. Forty Thousand dollars ($40,000.00) paid by BMIC; and
>
> c. Two Million, Six Hundred Ten Thousand dollars ($2,610,000.00) paid by HMIC, broken into two payments of $310,000.00, paid on July 20, 2022, and $2,300,000.00 to be paid on January 15, 2023.

42. Auto-Owners did not contribute to the settlement of the Underlying Litigation in any way.

43. Despite being told of the mediated settlement conference and expressly indicating that it would not attend but hoped the Underlying Litigation would settle, Auto-Owners contends that coverage under the Auto-Owners Policy and Auto-Owners Umbrella Policy has been waived because the case settled as a result of the mediation without Auto-Owners' consent. [D.E 68 at 19, Fourteenth Affirmative Defense].

44. The Release and Settlement Agreement in the Underlying Litigation did not apply to HMIC's claims against Auto-Owners.

## **AUTO-OWNERS FAILURE TO DISCLOSE AND PRODUCE APPLICABLE POLICIES**

45. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

46. Multiple times during prior to and during the Underlying Litigation, Auto-Owners received requests from Underlying Plaintiffs for potentially applicable policies for the years 2018-2021.

47. Auto-Owners never provided Underlying Plaintiffs or Streamline and Mr. Maroules with copies of the additional policies and Auto-Owners' December 9, 2021 denial of coverage for the Underlying Litigation only considered coverage under the Auto-Owners Policy. [D.E. 34-3].

48. Auto-Owners' denied coverage for claims related to the failure of Streamline to pay reuse fees because "[a]ny allegations of failure to pay proper reuse fees beyond [2017] would occur after the Owners policy terminated in May of 2016." [D.E. 34-3 at 8].

49. Auto-Owners' denied coverage for claims related to Streamline's misappropriation of Leachman Stoller designs created for other builders and Streamline's attempts to pass the designs off as their own because the first allegations regarding Streamline's offering of designs for sale on a website, which spanned through July of 2019, because "the firs allegations made regarding websites begin in February of 2017, which is eight months after the policy with Owners terminated." [D.E. 34-3 at 8].

50. On January 31, 2024, Auto-Owners produced six additional insurance policies issued to Streamline and/or Mr. Maroules with policy periods spanning from 2018-2021.

51. This disclosure came one week before the discovery deadline, two days prior to the deposition of HMIC's expert, and more than two years <u>after</u> Auto-Owners denied coverage under a single policy.

52. Over two years after the initial Underlying Lawsuit was filed, Auto-Owners produced the following six policies on January 31, 2024:

    a. Auto-Owners 2018-2019 CGL Policy No. 182315-35314220-18;

b. Auto-Owners 2018-2019 Umbrella Policy No. 48-117-202-04;

c. Auto-Owners 2019-2020 CGL Policy No. 182315-35314220-19;

d. Auto-Owners 2019-2020 Umbrella Policy No. 48-117-202-04;

e. Auto-Owners 2020-2021 CGL Policy No. 182315-35314220-20; and

f. Auto-Owners 2020-2021 Umbrella Policy No. 48-117-202-04.

53. The Auto-Owners Policy, the Auto-Owners Umbrella Policy, and the six policies identified in Paragraph 51 shall collectively be referred to as the "Auto-Owners Policies."

54. Auto-Owners prides itself as an insurance company for the "little guys," even boosting on their website that *"we believe it is our corporate responsibility to aid local communities not only financially, but also with or time and talents….we pay what we owe according to the policy. No excuses. No loopholes."* See https://www.auto-owners.com.

55. Auto-Owners denied Streamline and Mr. Maroules a defense and indemnity and refused to participate in the mediation or settlement of the Underlying Litigation on the false premise that Auto-Owners did not issue a policy that was in place during the time of the alleged injury.

56. Auto-Owners did, in fact, issue policies with policy periods that spanned the time period of the alleged injuries.

57. Auto-Owners had ample time and opportunity to promptly investigate this matter and identify applicable periods prior to sending its denial letter.

58. More than two years after its denial, Auto-Owners disclosed the existence of policies that Auto-Owners issued to Streamline and/or Mr. Maroules that possibly afforded coverage to Streamline and Mr. Maroules.

59. Auto-Owners delayed disclosure of applicable insurance policies was unfair and deceptive.

60. As a direct result of Auto-Owners' failure to defend and indemnify Streamline and Mr. Maroules, despite issuing policies that afforded coverage to its insured, HMIC was injured by defending and indemnifying Streamline and Mr. Maroules in excess of its *pro rata* obligation.

## FIRST CLAIM FOR RELIEF
## (Contribution and Indemnification Against Auto-Owners)

61. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60 of the Complaint.

62. The Auto-Owners Policies were issued in North Carolina, and North Carolina governs the interpretation of the Auto-Owners Policies.

63. The words used in the Auto-Owners Policies have been selected by Auto-Owners, any ambiguity or uncertainty as to their meaning must be resolved in favor of the insureds and against Auto-Owners.

64. All provisions in an insurance policy which extended coverage to an insured must be construed liberally so as to afford coverage whenever possible by reasonable construction.

65. Exclusionary provisions in an insurance policy are not favored and, if ambiguous, will be construed against an insurer, in this case Auto-Owners, and in favor of an insured.

66. The duty to defend is broader than the obligation to pay damages incurred by events covered by a particular policy.

67. If just one of many claims asserted potentially triggers a coverage obligation, even though the other claims are not covered, then the insurer has a duty to defend all of the claims alleged in the suit.

68. If an insurer unjustifiably refuses to defend its insured, the insurer is obligated to pay the amount of any reasonable compromise or settlement made in good faith by the insured.

69. Multiple contended personal or advertising offenses were alleged to have been committed by one or both of Streamline or Mr. Maroules during the policy period of the Auto-Owners Policy.

70. One or more of the claims set forth in the Underlying Litigation are covered under the terms of the Auto-Owners Policies.

71. The claims against Streamline and Mr. Maroules in the Underlying Litigation allege one or more personal or advertising injuries under the terms of the Auto-Owners Policies.

72. The claims against Streamline and Mr. Maroules in the Underlying Litigation trigger the duty to defend under the Auto-Owners Policies.

73. The claims against Streamline and Mr. Maroules in the Underlying Litigation trigger the liability insuring agreements in the Auto-Owners Policies.

74. The claims against Streamline and Mr. Maroules in the Underlying Litigation are not excluded under the terms of the Auto-Owners Policies.

75. The claims against Streamline and Mr. Maroules trigger the insuring agreement in the Auto-Owners Umbrella Policies.

76. The claims against Streamline and Mr. Maroules in the Underlying Litigation are not excluded under the terms of the Auto-Owners Policies.

77. At the time of the issuance of the Auto-Owners denial letter, Auto-Owners was obligated to provide a defense to Streamline and Mr. Maroules.

78. Auto-Owners unjustifiably denied Streamline and Mr. Maroules a defense in the underlying litigation.

79. Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify Streamline and Mr. Maroules for the good faith settlement in the Underlying Litigation.

80. The same principle which obligates Auto-Owners to pay for the amounts expended by Streamline and Maroules applies to Auto-Owners' obligation to reimburse HMIC for sums it expended to settle.

81. Auto-Owners has waived its right to deny an indemnification obligation for the claims alleged in the Underlying Litigation.

82. Builders Mutual and HMIC extended a defense to Streamline and Mr. Maroules in the Underlying Litigation.

83. Because Auto-Owners unreasonably denied a defense to Streamline and Mr. Maroules, HMIC was injured in that it paid a disproportionate share of the cost of defense of the Underlying Litigation.

84. Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify HMIC for amounts HMIC expended towards the defense of Streamline and Mr. Maroules in the Underlying Litigation up to the coverage limit of the Auto-Owners Policies.

85. Builders Mutual and HMIC indemnified Streamline and Mr. Maroules through the settlement reached in the Underlying Litigation.

86. HMIC contributed $2,610,000 on behalf of Streamline and Mr. Maroules to the settlement of the Underlying Litigation.

87. Auto-Owners refused to participate in the mediated settlement conference conducted in the Underlying Litigation and did not contribute to the settlement.

88. Because Auto-Owners had an obligation to provide a defense at the time it issued the Auto-Owners denial letter and declined its opportunity to extend a defense, Auto-Owners is obligated to indemnify HMIC for amounts HMIC expended towards the defense and settlement of the Underlying Litigation up to the coverage limit of the Auto-Owners Policies.

## SECOND CLAIM FOR RELIEF
### (Violation of the North Carolina Unfair and Deceptive Trade Practices Act)

89. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 88 of the Complaint.

90. Multiple contended personal or advertising offenses were alleged to have been committed by one or both of Streamline or Mr. Maroules during the policy period of the Auto-Owners Policy.

91. By the language of Auto-Owners' denial of coverage, the claims against Streamline and Mr. Maroules in the Underlying Litigation trigger the duty to defend under the previously undisclosed Auto-Owners Policies.

92. Because Auto-Owners unreasonably denied a defense to Streamline and Mr. Maroules, HMIC paid a disproportionate share of the cost of defense of the Underlying Litigation.

93. In the negotiation of the Underlying Litigation, Auto-Owners failed to disclose applicable policies of insurance, failed to participate in mediation, and failed to contribute any money to the defense or indemnification of Streamline and Mr. Maroules to the detriment of other insurers on the risk, including HMIC.

94. Auto-Owners actions, as identified in the above paragraphs, including the failure to disclose applicable policies and failure to participate in the mediation of the Underlying Litigation

and failure to contribute to the defense or indemnification of Streamline and Mr. Maroules constitute unfair and/or deceptive acts or practices.

95. Auto-Owners' unfair and/or deceptive acts or practices were in or affecting commerce.

96. Auto-Owners' unfair and/or deceptive acts or practices, including the failure to disclose policies, had the capacity or tendency to deceive, and did, in fact, deceive HMIC with regard to the defense and indemnification of their mutual insureds Streamline and Mr. Maroules.

97. HMIC has suffered and continues to suffer damages as a direct and proximate result of Auto-Owners' acts and conduct, including sums of money spent defending and settling the Underlying Litigation.

98. Pursuant to N.C.G.S. § 75-16, HMIC is entitled to recover treble damages from Auto-Owners.

99. Pursuant to N.C.G.S. § 75-16.1, HMIC is entitled to recover reasonable attorneys' fees from Auto-Owners.

WHEREFORE, Plaintiff HMIC respectfully prays the Court for the following relief:

1. The Court enter a Declaratory Judgment that Auto-Owners had, without reservation, a duty under the Auto-Owners Policies to defend and indemnify Streamline and Mr. Maroules in the Underlying Litigation;

2. The Court enter judgement in favor of HMIC and against Auto-Owners and order Auto-Owners to reimburse amounts HMIC expended for the defense of Streamline and Mr. Maroules in the Underlying Litigation up to the applicable coverage limits of the Auto-Owners Policies;

3. The Court enter judgement in favor of HMIC and against Auto-Owners and order Auto-Owners to reimburse amounts HMIC contributed on behalf of Streamline and Mr. Maroules towards the settlement of the Underlying Litigation up to the applicable coverage limits of the Auto-Owners Policies;

4. The Court enter judgment in favor of HMIC and against Auto-Owners for Auto-Owners' violation of the North Carolina Unfair and Deceptive Trade Practices Act;

5. For an award to HMIC of treble damages pursuant to N.C. Gen. Stat. § 75-16 for Auto-Owners' violation of the North Carolina Unfair and Deceptive Trade Practices Act;

6. For an award to HMIC of attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 for Auto-Owners' violation of the North Carolina Unfair and Deceptive Trade Practices Act;

7. For a jury trial on all issues so triable; and

8. Any other and further relief as the Court may deem just and proper.

This the ___ day of _____, 2024.

        **TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

        BY: /s/ William A. Bulfer
            William A. Bulfer – N.C. State Bar No. 31424
            Daniel T. Strong – N.C. State Bar No. 49546
            Post Office Box 19207
            Raleigh, North Carolina 27619-9207
            Telephone:    (919) 873-0166
            Facsimile:    (919) 873-1814
            wbulfer@teaguecampbell.com
            dstrong@teaguecampbell.com
            *Attorneys for Harford Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all known counsel of record.

This the ___ day of _____, 2024.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: /s/ William A. Bulfer
    William A. Bulfer – N.C. State Bar No. 31424
    Daniel T. Strong – N.C. State Bar No. 49546